HESS, *Appellant*, v. BOARD OF PRESIDENT AND DIRECTORS
OF THE ST. LOUIS PUBLIC SCHOOLS.

### Division Two, March 13, 1894.

School Lands: SALE, APPROVAL OF. Where a school lot was sold sub-
ject to approval of the school board, the adoption of a recommenda-
tion made by the land and leasing committee to reserve another lot
for a school site instead of the one sold was not an approval of the
sale.

*Appeal from St. Louis City Circuit Court.*—HON. D. D.
FISHER, Judge.

AFFIRMED.

*J. Hugo Grimm* for appellant.

(1) That the records of the board contained suffi-
cient authority in writing to satisfy the statute of frauds,
will very clearly appear from an examination of the
following authorities. *Tufts v. Gold Mining Co.*, 14
Allen, 407; *Chase v. Lowell*, 7 Gray, 33; Waterman
on Spec. Perf. of Contracts, sec. 242; *Argus v. Mayor*,
55 N. Y. 500; *Himrod v. Railroad*, 22 Ohio St. 457; 1
Reed on Statute of Frauds, sec. 340. (2) The evidence
shows that the board approved of the sale. (3) Mr.
Player was, in August, 1890, the secretary of the
defendant, was the person who kept its books and
records, and the one person above all others who had
apparent authority to notify plaintiff what the action
of the board was as to this land. His declaration is
clearly within the scope of his authority and operates
as an estoppel against the corporation. Bigelow on
Estoppel [5 Ed.], p. 598, reads: "The rule of estoppel

between parties covers, of course, the misrepresentations of agents, even agents of corporations, when made in the scope of their employment. Where an agency really exists, the principal is estopped to deny the truth of the agent's statements, express or tacit, just as much as if he had himself made them, subject to the same limitations that would prevail in that case. Thus, a county or a city or other municipality may be estopped by the conduct of its agents.'' See, also: *Sexton v. Chicago*, 107 Ill. 323; *Cook v. Harms*, 108 Ill. 151; *Chicago v. Railroad*, 105 Ill. 85; *Chicago v. McGraw*, 75 Ill. 566; 1 Dillon on Mun. Corp. [4 Ed.], p. 382, note.

*Charles B. Stark* for respondent.

(1) No contract for the sale of lands made by an agent is binding upon the principal, unless such agent is authorized in writing to make said contract. R. S. 1889, sec. 5186. (2) The question of the statute of frauds was properly raised by general denial. *Springer v. Kleinsorge*, 83 Mo. 152; *Allen v. Richard*, 83 Mo. 55. (3) The sale was made subject to approval by respondent but was never approved by it.

GANTT, P. J.—The facts in this case, as shown by the testimony introduced, are as follows: At the meeting of the board of public schools on April 9, 1889, the "joint lands and leasing ways and means committee" reported to the board, recommending the withdrawal from sale of the Benton school property, on Ninth and St. Charles streets, and the sale by the board of a large number of pieces of unimproved property belonging to it, including the lot here in controversy, in its stead. The recommendation was that the board should sell the property at public auction for one-

fifth cash and the balance in four equal annual pay-
ments, with six per cent. interest, payable annually, to
be secured by deed of trust on the property sold, with
the privilege of taking up the notes at any time before
maturity; the proceeds of sale to be applied to the
erection of a fire proof library building, and *the sale to
be subject to the approval of the board.*

At the meeting of the board on April 8, 1890, the
lands and leasing committee, referring to its recom-
mendation of April 9, 1889, recommended that all the
lots of the school board mentioned in said recommen-
dation, "excepting only such as have been heretofore
sold, leased or reserved for school purposes" be placed
in the hands of Hammett-Anderson-Wade Real Estate
Company, to be sold upon the terms mentioned in said
recommendation. The lots in controversy were men-
tioned in said recommendation. The report was
approved, and the recommendation therein was
adopted.

The testimony further shows that on June 7, 1890,
the Hammett-Anderson-Wade Real Estate Company
conducted a public sale of school board property at the
real estate exchange in St. Louis; that among other
property sold were three lots bought by plaintiff; that
plaintiff was the best bidder for said three lots, and the
same was knocked down to him; that he paid $150
down as earnest money and received the receipt of the
Hammett-Anderson-Wade Real Estate Company, in
these words:

"ST. LOUIS, June 7, 1890.

"Received of Wm. E. Hess the sum of one hundred
and fifty dollars as earnest and part purchase money
for lots No. 1, 2 and 3, in city block No. 1439, which
property is sold to him this day at auction, *subject to
the approval of the board of president and directors of the
St. Louis public schools,* for the sum of $38.50 per front.

foot.  *If approved*, sale to be closed within thirty days from date of approval of that date.   Terms, one-fifth cash and balance in four equal payments, payable on or before one, two, three and four years respectively. Deferred payments to bear annually six per cent. interest, and to be secured by deed of trust on premises sold.   Title perfect or no sale, and earnest money refunded.

"HAMMETT-ANDERSON-WADE REAL ESTATE CO.,

"Agents, per F. J. Price."

It appears from the record of the board of its meeting on June 17, 1890, the lands and leasing committee reported to the board, submitting the report of the sale of school property made by Hammett-Anderson-Wade Real Estate Company and recommending "that the sale be approved, and that the proper officers of the board be authorized to prepare and execute the necessary papers to carry the same into effect upon the compliance with the terms of sale by the purchasers, except lots 11 to 16, inclusive, in block 1440, which are reserved for a school site."

The report of the Hammett-Anderson-Wade Real Estate Company, submitted with this report, showed the sale of all the property mentioned in said recommendation of April 8, 1890, including the sale to plaintiff of the land in controversy, its description, and the entire price at which it was sold.   The report was approved, except as to lots 1 to 10 in block 1439 and 11 to 16 in block 1440.   As to these, "Mr. McEntire moved that the approval of the sale of lots 1 to 10, inclusive, in block 1439 and 11 to 16, inclusive, in block 1440, be laid over to the next meeting of the board;" which motion was carried.

At the meeting of the board of August 12, 1890, the lands and leasing committee, reported as follows:

"V.   Your committee, after duly considering the

advisability of reserving lots 1 to 10 in block 1439 for a school site in place of lots 11 to 16 inclusive in block 1440, as recommended at the meeting of the board June 17, and laid over for further consideration, respectfully renew the recommendation as to the reser-. vation of lots 11 to 16 in block 1440 as a site for a school." This report was adopted.

The evidence also shows that after this meeting of August 12, plaintiff called upon Mr. Player, secretary of the school board, to inquire about the sale of this property to him; that this was about the twenty-seventh of August; that Mr. Player told him that the sale of this property to him had been approved by the board, and that he should hold himself in readiness, as it would be only a few days when Mr. Stark, the attorney of the board, would return from Tennessee, and the deed would be delivered to witness; that witness thereupon converted some securities which he had into cash money, so as to be able to consummate the purchase, and had the title to the property examined, for which examination he paid; that he had, before going to Mr. Player, applied for information to the Hammett-Anderson-Wade Real Estate Company, who made the sale; that witness also called on Mr. Stark, the attorney for the board, who told witness that he was under the impression that the deed had already been delivered to him, but would look into the matter. Witness further testified that in December, 1890, the secretary of the board called upon him at his place of business and offered to give him a check for the earnest money which he had paid, asking him to surrender the receipt which had been given him by Hammett-Anderson-Wade Real Estate Company; that witness refused to take back the money and demanded title to the property, and threatened suit if a deed were not given him; that Mr. Player was secretary of the board during all this time.

The evidence further shows that Mr. Stark the attorney for the board made a report on October 14, 1890, in which he called the attention of the board to what he thought was an oversight, their failure to formally approve the sale to plaintiff, and the neglect to direct him to make the conveyances, and he recommended that authority be given to prepare and execute the deed. This report was received and Mr. McEntire, a member of the board moved that plaintiff's money be refunded, and the sale disapproved. His resolution was lost, whereupon a motion to reconsider was entered by Mr. Troll, another member, and it was reconsidered.

The circuit court refused specific performance, and plaintiff appeals.

I. Waiving the failure of plaintiff to show that the real estate committee was authorized in writing to make a contract that would bind the school board as required by our statutes of frauds, section 5186, Revised Statutes, 1889, and that said company had authority to appoint Mr. Price, as a subagent or to delegate its authority to him, still the only evidence of the contract is the receipt given by Price and accepted by plaintiff, June 7, 1890. By its terms the sale was "subject to approval of the school board," and was in accordance with the resolution of April 9, 1889. Was the sale approved by the board? Counsel for plaintiff accepts the burden of showing it was. He bases his argument upon the action of the board.

. When this sale was reported to the board, it became a question whether the board would reserve the lots in block 1440 or these lots in block 1439, for a school site. The majority of the land and leasing committee recommended the reservation of the lots in block 1440, but a minority report favored reserving the lots in block 1439. At the meeting when Mr. Dozier

moved the adoption of the majority report, Mr. McEntire moved this amendment, to the report, "that the lots 1 to 10 inclusive in block 1439 be reserved for school purposes instead of lots 11 to 16 in block 1440." This amendment was lost. A motion was then made to postpone the whole matter to the next meeting and it was carried. At the August meeting the majority renewed their recommendation to reserve the lots in block 1440, for a school site, and their recommendation was adopted. Plaintiff insists that this amounted to an approval of the sale and a direction to prepare the deeds.

We have carefully considered his argument but we can not bring ourselves to agree that because this board decided to reserve the lots in 1440 for a school site, that it thereby approved the sale of the lots in 1439. By the terms of the receipt to him the board reserved the right of approval without condition. It did not agree with plaintiff that if it did not conclude to use these lots in 1439 for a school site, it would approve his sale. It was a mere incident that the discussion arose as to what lots they would need for a school site, and the vote on this question was between the lots in 1440 and 1439. This we think is a fair conclusion of the recommendation at the August meeting. Nothing in it referred to the approval of the sale of the portion not reserved for the site. While the argument is clever, we do not think the adoption of this recommendation was tantamount to an approval. As between the two sites, it settled the selection, but it was entirely competent for the board to reserve *both* if it saw fit.

The sale was never approved, and as this was the condition precedent necessary to entitle plaintiff to a deed, we think he failed to make his case. The right to specific performance is one addressed to the sound

discretion of the court. We find no reason for interfering with the judgment of the circuit court and it is affirmed. BURGESS and SHERWOOD, JJ., concur.